**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
MARSHALL DIVISION**

| | |
|---|---|
| PerdiemCo LLC,<br><br>　　　　　　Plaintiff,<br><br>　　v.<br><br>Geotab Inc. and Geotab USA, Inc.,<br><br>　　　　　　Defendants. | Docket No. 2:16-cv-1203<br><br>**JURY TRIAL DEMANDED** |

**COMPLAINT**

Plaintiff PerdiemCo LLC ("PerDiem") files this complaint against Geotab Inc. and Geotab USA, Inc. (collectively, "Geotab" or "Defendants") for infringement of U.S. Patent Nos. 9,119,033 ("the '033 patent), and 9,319,471 ("the '471 patent") (collectively, "patents-in-suit"). PerDiem hereby alleges as follows:

**Nature of the Suit**

1. This is a claim for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.

**The Parties**

2. PerDiem is a Texas limited liability company with its principal place of business at 505 E Travis Street, Suite 205, Marshall, TX 75670-4258.

3. Darrell Diem, the inventor of the patents-in-suit and Chief Technology Officer of PerDiem, served in the Air Force for four years as an electronics technician.  After being honorably discharged, Mr. Diem worked his way through college to earn degrees in

physics and math from Marquette University. Mr. Diem also obtained a Masters of Business Administration from Michigan State, and a Masters of Arts in Pastoral Ministries from St. Thomas University, Miami, Florida. Mr. Diem has worked for Motorola, Harris Corporation, Time Domain, and other leading technology companies. Mr. Diem currently teaches computers to students at St. John the Baptist Catholic School.

4. Mr. Diem conceived the inventions in the patents-in-suit when his daughter's car broke down on a long road trip. Mr. Diem wanted to convey location information for his daughter in an efficient way that would still protect her privacy. Mr. Diem's inventions, which have a broad range of significant applications, are widely used today.

5. Geotab Inc. is a corporation organized and existing under the laws of Canada with its principal place of business at 1081 South Service Road West, Oakville, Ontario L6L 6K3, Canada. Geotab Inc. can be served with process through its registered agent: Corporation Service Company, 2711 Centerville Road, Ste 400, Wilmington, DE 19808.

6. Geotab USA, Inc. is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 1802 Alafaya Trail, Orlando, FL 32826. Geotab USA, Inc. can be served with process through its registered agent: Corporation Service Company, 2711 Centerville Road, Ste 400, Wilmington, DE 19808.

## The Accused Products

7. Defendants make, use, sell, offer for sale, and/or import products and services that infringe the patents-in-suit. These include Geotab's fleet tracking system, which comprises (without limitation) at least the MyGeotab software and any servers or systems implementing or associated with that software.

8. Geotab provides a fleet tracking system to its customers. According to Geotab, its system allows customers to "[s]ee where [their] vehicles are in near real-time or choose a custom date and look back to see where your fleet has been." https://www.geotab.com/fleet-management-software/

9. Geotab provides a server-based solution through its MyGeotab software: "MyGeotab is a web-based fleet management software that is available to all Geotab customers[.]" https://www.geotab.com/fleet-management-software/. Geotab makes the same system available to all its customers: "Fleets of all sizes, no matter how small or large, all have the same software foundation to grow on." https://www.geotab.com/fleet-management-software/.

10. Geotab uses GO6 and GO7 GPS devices and other similar devices to feed location and vehicle data to the MyGeotab system. According to Geotab, the GO7 is "A World Leading GPS Vehicle Tracking Device" that provides "Fast GPS acquisition time[.]" https://www.geotab.com/vehicle-tracking-device/. It integrates with other devices in the vehicle that allow driver identification and interaction: "Through Geotab's IOX expansion technology that connects to the Geotab GO6 and GO7, you can add a compatible Garmin device for driver dispatching, messaging and HOS compliance. . . . Drivers log their HOS and duty status changes on the Garmin device, which tracks driver activities and provides potential violation alerts." https://www.geotab.com/fleet-management-solutions/compliance/.

11. Geotab also uses unique identification codes to track its drivers and assets, including but not limited to driver authentication through NFC: "With a simple tap of the NFC,

        Geotab's Driver ID solution allows reporting by either the driver or the vehicle asset."

        https://www.geotab.com/fleet-management-solutions/productivity/.

12.      Geotab also uses other methods for uniquely identifying users and assets, including log-ins and passwords (https://my.geotab.com/default.html). Also, technology like the aforementioned GO devices (https://www.geotab.com/vehicle-tracking-device/) are known to use unique identifying codes.

13.      Geotab provides a portal login that allows its customers to manage and track assets online, in real time:

[myGeotab login screen showing User (Email) and Password fields, Log in button, "New customer? Register" link, and "Remember me" checkbox]

https://my.geotab.com/default.html.



https://www.geotab.com/fleet-management-solutions/productivity/.

14. As part of its MyGeotab web application, Geotab allows users to create geofences that encompass a specific geographic area: "A geofence is a virtual perimeter or a fence around a geographical real-world area of interest. With geofencing, users are able to draw virtual perimeters around places of work, customers' sites, airports, gas stations, entire states, homes, and more." https://www.geotab.com/blog/overview-geofencing-routing-mygeotab/. Geotab also refers to geofences as zones, and explains that users have significant flexibility in defining them: "Zones can be any shape that consists of three or more sides. For example, some users create their zones to contain smaller office locations such as parking lots, while others may define larger zones such as an entire highway." https://www.geotab.com/faq/.

15. Geotab allows users to specify geofences or zones using a map interface: "A large number of zones can be created by importing a bulk list of latitude and longitude information prepared through a spreadsheet application, or by defining the boundaries of the zone through the map."

5



Figure 1: Example of creating a zone on the map within MyGeotab

https://www.geotab.com/blog/overview-geofencing-routing-mygeotab/.

16. Geotab touts the significant benefits from combining geofences or zones with rules that trigger if vehicles enter or exit those zones and notifications that inform customers: "A geofence . . . can also be a critical component for analyzing fleet behavior when combined with exception reporting and notifications.  There are several benefits that can be gained through making use of geofencing, some of which include: Establishing driver accountability; Increasing productivity; [and] Tracking high value assets[.]" https://www.geotab.com/blog/overview-geofencing-routing-mygeotab/.

17. Geotab allows customers to manage fleet security through the server-based system.  For example, Geotab allows customers to add users, grant users permission to view certain

groups, and assign users distinct privileges: "New users can be added under the Administration > Users section[ of the MyGeotab software]. Here [the customer] can assign users to groups, give them security clearances to groups and specific features appropriate for their role (role-based permissions), assign driver id keys to them, and customize their user settings." https://www.geotab.com/faq/.

18. Geotab provides customers a means for analyzing assets. For example, it provides reports for users, zones, customer visits, and groups. https://www.geotab.com/wp-content/themes/geotab-template/resources/videos/doc/Default%20Reports.pdf.

19. Geotab provides a solution where an asset being transported is tracked separately and in addition to the vehicle being transported. This facilitates situations where such cargo may be transported through different trucks, or by boat or other means. Geotab implements this capability by configuring its MyGeotab software to interface with hardware and software from companies like Cirrus Link Solutions. Geotab then makes integrative software available through its website: "Chariot Asset Geotab Integrator service enables fleet managers the ability to track critical and valuable assets within the MyGeotab fleet management platform. Easy to install pre-configured rugged asset tracking devices utilizing cellular connectivity enable the monitoring of assets such as trailers, compressors, forklifts or any other myriad of assets." https://www.geotab.com/marketplace/add-on/cirrus-link-asset-tracking/.

## Jurisdiction and Venue

20. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

21. Defendants maintain continuous and systematic contacts within this District by selling and offering for sale products and services to customers within this District, and by offering for sale products and services that are used within this District.

22. This Court has specific personal jurisdiction over Defendants pursuant to due process and the Texas Long Arm Statute because Defendants, directly or through intermediaries, have conducted and conduct substantial business in this forum, including but not limited to: (i) engaging in at least part of the infringing acts alleged herein; (ii) purposefully and voluntarily placing one or more infringing products or services into the stream of commerce with the expectation that they will be purchased and/or used by consumers in this forum; and/or (iii) regularly doing or soliciting business, engaging in other persistent courses of conduct, or deriving substantial revenue from goods and services provided to individuals in Texas and in this District.  Venue is proper in this Court under 28 U.S.C. §§ 1391(b)-(d) and 1400(b) for the reasons set forth above.

### The Patents-In-Suit

23. The '033 patent, entitled "System for Sharing Information About Groups of Individuals, Drivers, Vehicles or Objects" was duly and legally issued by the United States Patent and Trademark Office on August 25, 2015.  A copy of the '033 patent is attached hereto as Exhibit A.

24. The '471 patent, entitled "Object Location Tracking System Based on Relative Coordinate Systems Using Proximity Location Information Sources" was duly and legally issued by the United States Patent and Trademark Office on April 19, 2016.  A copy of the '471 patent is attached hereto as Exhibit B.

25. PerDiem is the exclusive owner of all rights, title, and interest in the '033 patent and the '471 patent. PerDiem has the right to bring this suit to recover damages for any current or past infringement of these patents.

26. The family of the patents-in-suit has been cited in other patents owned by many companies in a variety of industries, including at least Honeywell, Bank of America, Fatdoor, EMC Corporation, General Motors, Blackbird Technology, and Allure Energy.

### Notice of the Patents

27. Defendants have notice of the patents-in-suit. On May 15, 2015, PerDiem sued Geotab Inc. and Geotab USA, Inc. for infringement of other patents in the same patent family. That lawsuit is currently pending as Case No. 2:15-cv-00726-JRG-RSP.

28. PerDiem produced the file histories for the '033 patent and the '471 patent during the aforementioned litigation. The file histories also appear on the exhibit list for trial.

29. In addition, Defendants have knowledge of the patents-in-suit as of the date this Complaint was served.

### Count I – Infringement of the '033 Patent

30. Paragraphs 1 through 29 are incorporated by reference as if fully stated herein.

31. The '033 patent is valid and enforceable.

32. Defendants have infringed, and continue to infringe, one or more claims of the '033 patent, including but not limited to claim 1, under 35 U.S.C. § 271(a), either literally and/or under the doctrine of equivalents, by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, products and/or services encompassed by those claims, including for example, by making, using, selling, offering for sale, and/or importing the Accused Products.

33. Third parties, including Defendants' customers, have infringed, and continue to infringe, one or more claims of the '033 patent, including but not limited to claim 1, under 35 U.S.C. § 271(a), either literally and/or under the doctrine of equivalents, by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, the Accused Products.

34. Defendants have knowledge and notice of the '033 patent and its infringement as outlined in Paragraphs 27-29.

35. Defendants have induced infringement, and continue to induce infringement, of one or more claims of the '033 patent, including but not limited to claim 1, under 35 U.S.C. § 271(b). Defendants actively, knowingly, and intentionally induce, and continue to actively, knowingly, and intentionally induce, infringement of the '033 patent by selling or otherwise supplying the Accused Products with the knowledge and intent that third parties will use, sell, and/or offer for sale in the United States, and/or import into the United States the Accused Products for their intended purpose to infringe the '033 patent; and with the knowledge and intent to encourage and facilitate the infringement through the dissemination of the Accused Products and/or the creation and dissemination of documentation and technical information related to the Accused Products.

36. Defendants have contributed to the infringement by third parties, including their customers. Defendants continue to contribute to infringement by third parties, including their customers, of one or more claims of the '033 patent, including but not limited to claim 1, under 35 U.S.C. § 271(c), by selling and/or offering for sale in the United States and/or importing into the United States the Accused Products knowing that those products constitute a material part of the inventions of the '033 patent, knowing that

those products are especially made or adapted to infringe the '033 patent, and knowing that those products are not staple articles of commerce suitable for substantial noninfringing use.

37. Claims of the patents-in-suit read on systems and devices that communicate with mobile devices associated with location information sources. '033 patent at 22:45-48. The Accused Products satisfy this limitation. For example, Geotab uses GO6 and GO7 GPS devices and other similar devices to feed location and vehicle data to the MyGeotab system. According to Geotab, the GO7 is "A World Leading GPS Vehicle Tracking Device" that provides "Fast GPS acquisition time[.]" https://www.geotab.com/vehicle-tracking-device/. It integrates with other devices in the vehicle that allow driver identification and interaction: "Through Geotab's IOX expansion technology that connects to the Geotab GO6 and GO7, you can add a compatible Garmin device for driver dispatching, messaging and HOS compliance. . . . Drivers log their HOS and duty status changes on the Garmin device, which tracks driver activities and provides potential violation alerts." https://www.geotab.com/fleet-management-solutions/compliance/.

38. Claims of the patents-in-suit read on systems and devices that store information regarding groups of mobile devices. '033 patent at 22:50-58. The Accused Products satisfy this limitation. For example, Geotab allows customers to add users, grant users permission to view certain groups, and assign users distinct privileges: "New users can be added under the Administration > Users section[ of the MyGeotab software]. Here [the customer] can assign users to groups, give them security clearances to groups and specific features appropriate for their role (role-based permissions), assign driver id keys to them, and customize their user settings." https://www.geotab.com/faq/.

11

39. Claims of the patents-in-suit read on systems and devices and that use a map interface to specify locations. '033 patent at 23:3-6. The Accused Products satisfy this limitation. For example, Geotab allows users to "defin[e] the boundaries of the zone through the map." https://www.geotab.com/blog/overview-geofencing-routing-mygeotab/.

40. Claims of the patents-in-suit read on systems and devices that obtain object location information, trigger events, and convey event information. '033 patent at 23:7-12, 23:9-14. The Accused Products satisfy this limitation. For example, Geotab allows users to "combine[ a geofence] with exception reporting and notifications." https://www.geotab.com/blog/overview-geofencing-routing-mygeotab/. Users can then combine "geofence[s] . . . with exception reporting and notifications." https://www.geotab.com/blog/overview-geofencing-routing-mygeotab/.

41. PerDiem has been and continues to be damaged by the infringement of the '033 patent from Defendants.

42. Since having knowledge of the '033 patent, Defendants knew or should have known that, without taking a license to the patents-in-suit, its actions continue to infringe one or more claims of the '033 patent. Therefore, Defendants have willfully infringed and continue to do so.

43. The conduct by Defendants in infringing the '033 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

## Count II – Infringement of the '471 Patent

44. Paragraphs 1 through 29 are incorporated by reference as if fully stated herein.

45. The '471 patent is valid and enforceable.

46. Defendants have infringed, and continue to infringe, one or more claims of the '471 patent, including but not limited to claim 1, under 35 U.S.C. § 271(a), either literally and/or under the doctrine of equivalents, by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, products and/or services encompassed by those claims, including for example, by making, using, selling, offering for sale, and/or importing the Accused Products.

47. Third parties, including Defendants' customers, have infringed, and continue to infringe, one or more claims of the '471 patent, including but not limited to claim 1, under 35 U.S.C. § 271(a), either literally and/or under the doctrine of equivalents, by making, using, selling, and/or offering for sale in the United States, and/or importing into the United States, the Accused Products.

48. Defendants have knowledge and notice of the '471 patent and its infringement as outlined in Paragraphs 27-29.

49. Defendants have induced infringement, and continue to induce infringement, of one or more claims of the '471 patent, including but not limited to claim 1, under 35 U.S.C. § 271(b). Defendants actively, knowingly, and intentionally induce, and continue to actively, knowingly, and intentionally induce, infringement of the '471 patent by selling or otherwise supplying the Accused Products with the knowledge and intent that third parties will use, sell, and/or offer for sale in the United States, and/or import into the United States the Accused Products for their intended purpose to infringe the '471 patent; and with the knowledge and intent to encourage and facilitate the infringement through the dissemination of the Accused Products and/or the creation and dissemination of documentation and technical information related to the Accused Products.

50. Defendants have contributed to the infringement by third parties, including their customers. Defendants continue to contribute to infringement by third parties, including their customers, of one or more claims of the '471 patent, including but not limited to claim 1, under 35 U.S.C. § 271(c), by selling and/or offering for sale in the United States and/or importing into the United States the Accused Products knowing that those products constitute a material part of the inventions of the '471 patent, knowing that those products are especially made or adapted to infringe the '471 patent, and knowing that those products are not staple articles of commerce suitable for substantial noninfringing use.

51. Claims of the patents-in-suit read on systems and devices that obtain object location information, trigger events, and convey event information. '471 patent at 22:53 – 23:5, 23:21-24, 23:30-34. The Accused Products satisfy this limitation. For example, Geotab allows users to "defin[e] the boundaries of the zone through the map." https://www.geotab.com/blog/overview-geofencing-routing-mygeotab/. Users can then combine "geofence[s] . . . with exception reporting and notifications." https://www.geotab.com/blog/overview-geofencing-routing-mygeotab/.

52. The claims of the patents-in-suit read on systems and devices that convey the aforementioned information as regulated by identification codes and privileges. '471 patent at 22:53 – 23:26. The Accused Products satisfy this limitation. For example, Geotab secures access with usernames and passwords, and provides accounts with different vehicle-viewing capabilities and access privileges. *See* https://my.geotab.com/default.html (showing login page); https://www.geotab.com/fleet-management-solutions/productivity/ ("With a simple tap of the NFC, Geotab's Driver ID

solution allows reporting by either the driver or the vehicle asset.");

https://www.geotab.com/faq/ ("New users can be added under the Administration > Users section[ of the MyGeotab software]. Here [the customer] can assign users to groups, give them security clearances to groups and specific features appropriate for their role (role-based permissions), assign driver id keys to them, and customize their user settings."). These examples are not exhaustive. As PerDiem details above, Defendants use other unique identifiers, including but not limited to those associated with the GO devices.

53. PerDiem has been and continues to be damaged by the infringement of the '471 patent from Defendants.

54. Since having knowledge of the '471 patent, Defendants knew or should have known that, without taking a license to the patents-in-suit, its actions continue to infringe one or more claims of the '471 patent. Therefore, Defendants have willfully infringed and continue to do so.

55. The conduct by Defendants in infringing the '471 patent renders this case exceptional within the meaning of 35 U.S.C. § 285.

**Prayer for Relief**

WHEREFORE, PerDiem prays for judgment as follows:

A. That Defendants have infringed each of the patents-in-suit;

B. That PerDiem be awarded all damages adequate to compensate it for Defendants' infringement of the patents-in-suit, such damages to be determined by a jury with pre-judgment and post-judgment interest;

C. A judgment that the infringement was willful and that such damages be trebled;

D. An order permanently enjoining Defendants and their officers, agents, servants and employees, privies, and all persons in concert or participation with it, from further infringement of the patents-in-suit;

E. That this case be declared an exceptional case within the meaning of 35 U.S.C. § 285 and that PerDiem be awarded attorney fees, costs, and expenses incurred in connection with this action; and

F. That PerDiem be awarded such other and further relief as this Court deems just and proper.

## Demand for Jury Trial

PerDiem hereby demands a trial by jury on all issues so triable.

DATED: October 26, 2016

       */s/ J. Mark Mann*
J. Mark Mann
State Bar No. 12926150
mark@themannfirm.com
G. Blake Thompson
State Bar No. 24042033
blake@themannfirm.com
MANN | TINDEL | THOMPSON
300 West Main Street
Henderson, Texas 75652
Telephone: (903) 657-8540
Facsimile: (903) 657-6003

Alan L. Whitehurst
Marissa R. Ducca
QUINN EMANUEL URQUHART & SULLIVAN, LLP
777 6th Street, NW 11th Floor
Washington, DC 20001
Telephone: 202-538-8000
Facsimile: 202-538-8100
alanwhitehurst@quinnemanuel.com
marissaducca@quinnemanuel.com

*Attorneys for Plaintiff PerdiemCo LLC*